BARONA GROUP OF the CAPITAN GRANDE BAND OF MISSION INDIANS, Plaintiff-Appellee,

v.

AMERICAN MANAGEMENT & AMUSEMENT, INC., Defendant-Appellant.

No. 86–6605.

United States Court of Appeals, Ninth Circuit.

Argued June 5, 1987.

Submitted July 20, 1987.

Decided Aug. 7, 1987.

As Amended on Denial of Rehearing and Rehearing En Banc March 17, 1988.*

Art Bunce, Escondido, Cal., for plaintiff-appellee.

Monty A. McIntyre, San Diego, Cal., for defendant-appellant.

Before ALARCON and O'SCANNLAIN, Circuit Judges, and BROOMFIELD,** District Judge.

ALARCON, Circuit Judge:

Defendant-appellant American Management & Amusement, Inc. (AMA) appeals the order granting summary judgment in favor of plaintiff-appellee Barona Group of the Capitan Grande Band of Mission Indians (Band) in this declaratory relief action involving a tribal bingo management agreement. AMA entered into an agreement with the Band to finance, construct and operate a bingo facility on the Band's reservation. The Band filed a complaint in district court to have the agreement declared null and void under 25 U.S.C. § 81 (1982) because it did not have the approval of the Secretary of the Interior (Secretary) and the Bureau of Indian Affairs (BIA). The district court granted the Band's mo-

tion for summary judgment and ruled the agreement was null and void under section 81.

AMA contends (1) the district court lacked jurisdiction to hear the motion for summary judgment because (a) the bankruptcy court's automatic stay was in effect at the time, and (b) the district court did not formally withdraw its reference of the case under 28 U.S.C. § 157(d) (Supp. III 1985) from the bankruptcy court, (2) the district court abused its discretion in not granting it a six-month continuance to conduct further discovery, (3) there are triable issues of material fact, (4) the 1983 tribal bingo valid management agreement is valid under 25 U.S.C. § 81, (5) the district court failed to defer to the October 6, 1981 correspondence from the BIA as to the validity of the agreement, (6) its rights to just compensation and due process under the fifth and fourteenth amendments, and equal protection under the fourteenth amendment were violated, (7) it is entitled to the defense of laches, and (8) the district court did not permit it a reasonable period of time to obtain BIA approval of the 1983 agreement. We disagree and affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On April 20, 1981, the Band and AMA entered into a tribal bingo management agreement (1981 agreement). The 1981 agreement required AMA to finance, construct and operate a bingo facility for 25 years on the Band's reservation in San Diego County, California. Under the agreement, AMA would receive 45% of the net profits and the Band 55%. AMA invested $3.6 million for the construction and operation of the bingo facility.

In September 1981, AMA submitted the 1981 agreement to the BIA for approval as required by 25 U.S.C. § 81. Section 81 provides in pertinent part:

No agreement shall be made by any person with any tribe of Indians ... for

** Hon. Robert C. Broomfield, United States District Judge for the District of Arizona, sitting by

designation.

the payment or delivery of any money or other thing of value ... in consideration of services for said Indians *relative to their lands* ... unless such contract or agreement be executed and approved as follows: ....

[I]t shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it.... [¶] All contracts or agreements made in violation of this section shall be null and void....

(Emphasis added). On October 6, 1981, the Acting Superintendent of the Southern California BIA office notified AMA that the 1981 agreement did not require its approval. The BIA official explained:

Your enclosed agreement has been read carefully and we find, inasmuch as trust lands and funds are not involved, that the document does not require the approval or consent of the Bureau of Indian Affairs.

We have conferred with the Field Solicitor's Office, Riverside and they concur with the above statement....

This letter is limited only to the question of the need of Bureau approval of the Barona Group Bingo Agreement.

On April 15, 1983, AMA began operating bingo games pursuant to the 1981 agreement. On May 11, 1983, AMA and the Band entered into a new tribal bingo management agreement (1983 agreement). The 1983 agreement was similar to the 1981 agreement. The 1983 agreement provided that when it was executed, "it will take the place of, substitute for, replace, supersede, and cancel" the 1981 agreement. The 1983 agreement was not submitted to the BIA for approval.

In April 1986, the bingo operation and facility were shut down. On May 19, 1986, the Band filed a complaint against AMA for declaratory relief, breach of contract, and damages. The Band sought to have the 1983 contract declared null and void under 25 U.S.C. § 81 because it was not approved by the BIA.

On June 10, 1986, AMA filed a counterclaim against the Band and its counsel for (1) breach of the 1983 agreement, (2) quantum meruit for the value of its $3.6 million investment in the bingo operation and facility, (3) breach of the covenant of good faith and fair dealing, (4) fraud, (5) intentional interference with prospective economic advantage, (6) negligent misrepresentation, (7) negligence, and (8) indemnity.

On June 24, 1986, AMA filed a Chapter 11 proceeding in bankruptcy court which automatically stayed the proceedings in the district court under 11 U.S.C. § 362(a) (1982 & Supp. III 1985). On July 31, 1986, the Band filed a motion in the bankruptcy court for relief from the stay. On September 15, 1986, the bankruptcy court notified the parties that it would grant partial relief from the stay so that the issue of the validity of the 1983 contract under section 81 could be litigated.

On September 19, 1986, the Band filed a motion for summary judgment claiming the 1983 contract was null and void under 25 U.S.C. § 81. On October 17, 1986, the district court granted the Band's motion.

## JURISDICTION

The order granting summary judgment did not dispose of all of the issues, but the district court certified its order and judgment for appeal under Fed.R.Civ.P.Rule 54(b). Thus, this court has jurisdiction of this appeal. 28 U.S.C. § 1291 (1982).

## DISCUSSION

### I. PROCEDURAL PROBLEMS WITH THE SUMMARY JUDGMENT MOTION

#### A. *Violation of the Stay Order*

AMA contends the district court "had no power to consider and determine the motion for summary judgment at the time it did" because "no order granting relief from stay had yet been entered in the bankruptcy action." We disagree.

On June 24, 1986, the proceedings in the district court were automatically stayed under 11 U.S.C. § 362(a) when AMA filed a Chapter 11 petition for bankruptcy. On August 4, 1986 the Band filed a motion for relief from the automatic stay under 11 U.S.C. § 362(d)(1) in the bankruptcy court

to proceed against AMA. On September 15, 1986, the bankruptcy court notified both parties that it was granting partial relief from the stay:

> The Tribe should have relief from the stay for a limited purpose of obtaining a determination from the District Court with respect *only* to the declaration regarding the validity of the 1983 contract.... [¶] Counsel for the Tribe is directed to prepare an order in accordance with this letter opinion within ten days from the date hereof.

(Emphasis in original).

■ On September 22, 1986, the Band filed a motion for summary judgment in the district court. On October 17, 1986, the district court orally granted the Band's motion. On November 7, 1986, the bankruptcy court's order granting the Band relief from the automatic stay was filed. On November 10, 1986, the district court entered judgment as to the first claim for declaratory relief as to the validity of the 1983 agreement.

The district court did not enter judgment as to the claim for declaratory relief until *after* the bankruptcy court entered its order granting the Band partial relief from the automatic stay. Thus, the district court had jurisdiction to enter judgment granting the Band's motion for summary judgment.

### B. *Failure to Withdraw the Reference*

■ AMA next contends the district court did not have jurisdiction to rule on the Band's summary judgment motion because it did not formally withdraw its reference of the case under 28 U.S.C. § 157(d) (Supp. III 1985) to the bankruptcy court. We disagree. 28 U.S.C. § 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section [to the bankruptcy court], on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of

the United States regulating organizations or activities affecting interstate commerce.

On June 22, 1987, the district court partially withdrew the reference of this case under Chapter 11 nunc pro tunc to September 15, 1986, to determine the issue of the validity of the tribal bingo management agreement. The district court stated:

> [T]he Court finds that good cause exists in this case for this Court to withdraw its reference of this bankruptcy case from the U.S. Bankruptcy Court for the Southern District of California, but only to the extent of permitting this Court to hear and determine the issue of the validity of the management agreement of May 11, 1983 between the parties under 25 U.S.C. § 81, and to do so nunc pro tunc to September 15, 1986.

Thus, AMA's claim necessarily fails. AMA similarly claims the summary judgment motion was not timely filed under the local district court rules of court because the bankruptcy court had not filed its order granting the Band relief from the stay at the time the motion was filed. This claim is merely a restatement of the claim discussed above and rejected.

### II. DISCOVERY

AMA contends the district court abused its discretion in proceeding to summary judgment and not granting it a six-month continuance to conduct further discovery. In AMA's 110 page memorandum in opposition to the Band's motion for summary judgment, AMA stated that it needed the continuance to conduct discovery "to support its affirmative defenses." The memorandum contained two declarations and 15 separate arguments. AMA specifically claimed in its memorandum it needed to depose (1) the Band's counsel, Mr. Bunce and Mr. Beach, (2) BIA representatives, and (3) the Hon. Judith Keep. The district court implicitly denied AMA's request for a continuance when it granted the Band's motion for summary judgment.

■ The district court's denial of a request to conduct further discovery made by a party opposing a motion for summary

judgment is reviewed under the deferential abuse of discretion standard. *Garrett v. City & County of San Francisco,* 818 F.2d 1515, 1518 (9th Cir.1987); *United States v. 5,644,540.00 in U.S. Currency,* 799 F.2d 1357, 1361 (9th Cir.1986).[1]

Fed.R.Civ.P.Rule 56(f) provides:

Should it appear *from the affidavits of a party* opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(Emphasis added.) This court recently stated:

References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f). Rule 56(f) requires affidavits setting forth the particular facts expected from the movant's discovery. Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment.

*Brae Transp., Inc. v. Coopers & Lybrand (Brae),* 790 F.2d 1439, 1443 (9th Cir.1986) (citing *Foster v. Arcata Assocs., Inc.,* 772 F.2d 1453, 1467 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986)). "Under Rule 56(f), an opposing party must make clear what information is sought and how it would preclude summary judgment." *Garrett,* 818 F.2d at 1518; *Continental Maritime v. Pacific Coast Metal Trades,* 817 F.2d 1391, 1395

(9th Cir.1987) ("the party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact").

■ In the instant case, AMA did not file an affidavit in support of its request for a continuance as required by Rule 56(f) and *Brae.* It merely stated in its memorandum in opposition to the motion for a summary judgment that it wished to depose four named individuals "to support its affirmative defenses." Moreover, AMA did not claim that these depositions would uncover issues of material fact. Because AMA failed to explain how additional discovery would have affected the disposition of the case, the district court did not abuse its discretion in denying AMA's request for further discovery. *Over the Road Drivers, Inc. v. Transport Ins. Co.,* 637 F.2d 816, 820 (1st Cir.1980); *Shavrnoch v. Clark Oil & Refining Corp.,* 726 F.2d 291, 294 (6th Cir.1984).

## III. TRIABLE ISSUES OF MATERIAL FACT

AMA contends that the district court erred in granting the Band's motion for summary judgment because there are triable issues of material fact. We discuss each of AMA's alleged issues of material fact under separate headings.

### A. The Limited Subject Matter Resolved In the Motion for Summary Judgment

The Band sought declaratory relief by way of summary judgment that the 1983

---

1. In *Garrett,* defendants had moved for summary judgment. 818 F.2d at 1517. Plaintiff then filed a motion to compel production of certain documents. *Id.* After conducting a hearing on both motions, the district court granted defendants' motion for summary judgment. *Id.* Having granted the defendants' dispositive motion, the court then denied the plaintiff's discovery motion as "moot" without considering it on the merits. *Id.* at 1517–18. On appeal, although we acknowledged that "[t]he trial court's refusal to permit further discovery is reviewed for an abuse of discretion," *id.* at 1518, we reviewed the issue *de novo* because this case "involve[d] the failure of the trial court to exercise its discretion, not the abuse of it." *Id.* We concluded

that it was error for the trial court to have granted defendants' motion for summary judgment without first having determined the merits of plaintiff's pending discovery motion.

*Garrett* is distinguishable from the case before us. In the instant matter, AMA requested a continuance to pursue discovery in its memorandum in opposition to the Band's motion for summary judgment; it did not file a separate motion which required a separate adjudication on the merits as did the plaintiff in *Garrett.* By granting the Band's motion for summary judgment without expressly addressing AMA's request for a continuance, the district court did not fail to exercise its discretion as did the court in *Garrett.*

agreement is null and void because it never was approved by the Secretary or BIA as required by 25 U.S.C. § 81. Applying this court's recent decision in *A.K. Management Co. v. San Manuel Band of Mission Indians,* 789 F.2d 785 (9th Cir.1986), which involved the same issue, the district court determined that the contract was null and void because it was not approved by the BIA.

### B. *Standards of Review*

We review de novo an order granting summary judgment. *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir. 1987). "The reviewing court need only decide whether there are any genuine issues of material fact remaining and whether the substantive law was correctly applied." *Fagner v. Heckler,* 779 F.2d 541, 543 (9th Cir.1985). The district court's construction of a statute is subject to de novo review. *In re Benny,* 812 F.2d 1133, 1140 (9th Cir.1987).

### C. *Alleged Issues of Material Fact*

■ 1. AMA initially claims "[t]here is a dispute of fact as to whether or not the 1983 amended management agreement requires the approval of the BIA and the Department of Interior under 25 U.S.C. Section 81." Issues of statutory construction are questions of law. *Pathfinder Mines Corp. v. Hodel,* 811 F.2d 1288, 1290 (9th Cir.1987). Courts confronted with the issue of whether a bingo agreement between Indians and a non-Indian contractor requires BIA and Secretary approval under section 81 have resolved the issue as a question of law. *See e.g., A.K. Management,* 789 F.2d at 787–88; *Wisconsin Winnebago Business Comm. v. Koberstein,* 762 F.2d 613, 619 (7th Cir.1985). A question of fact concerning the interpretation of a contract does not arise unless the contract is ambiguous. *National Union Fire Ins. Co. v. Argonaut Ins. Co.,* 701 F.2d 95, 97 (9th Cir.1983). AMA does not claim the 1983 agreement is ambiguous. Thus, the issue whether the 1983 agreement required BIA and Secretary approval under section 81 does not raise questions of fact.

■ 2. AMA claims "[t]here are questions of fact as to whether the BIA, in reviewing the *1981 contract* between the Tribe and AMA, approved the contract and/or determined that it was not subject to the provisions of 25 U.S.C. Section 81 so as to require BIA approval." (Emphasis added). The validity of the *1981* agreement was not the subject of the declaratory relief action brought by the Band. The motion for a summary judgment addressed the validity of the *1983* agreement. The 1981 agreement was nullified by the following language of the 1983 agreement:

> *Cancellation of previous agreement* —The parties recognize that they executed a somewhat similar version of this instrument on or about April 20, 1981. When this Management Agreement is executed by the parties it will take the place of, substitute for, replace, supersede, and cancel that prior Management Agreement in all respects.

Any alleged question of fact regarding the *1981* agreement is not material to the issues presented in the summary judgment motion in this matter.

> A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv. v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

3. AMA claims that there are disputed questions of fact concerning whether it was impossible for AMA to obtain BIA review of the 1983 management agreement. AMA argues it was impossible for it to obtain approval because the BIA "would not review or approve the 1983 agreement even if it was submitted for such review." AMA relies on the October 5, 1984 correspondence from the Department of the Interior, which states in part:

Until two federal courts recently held that 25 U.S.C. [§] 81 renders tribal bingo management contracts invalid unless they are approved pursuant to that section, the Bureau did not deem Bureau approval of management contracts between tribal governments and bingo management firms necessary unless they were also a lease or involved a lease.

■ AMA argues that the doctrine of impossibility of performance supports its contention that the 1983 agreement is valid. The doctrine of impossibility of performance has been only applied in contract cases where a party seeks to excuse his nonperformance of a condition of a contract. *See, e.g.,* Restatement (Second) of Contracts, § 266 (1981); *North Side Lumber Co. v. Block,* 753 F.2d 1482, 1484–86 (9th Cir.), *cert. denied,* 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985); *Balzer/Wolf Assocs., Inc. v. Parlex Corp.,* 753 F.2d 771, 775 (9th Cir.1985). In this matter, no contractual relationship existed between AMA and the Department of the Interior. AMA has not cited any case in which the doctrine of impossibility of performance has been applied where the parties to the action did not have a contractual relationship. Our research has disclosed none. AMA has failed to demonstrate that impossibility of performance is material to the resolution of the motion for summary judgment.

■ 4. AMA next claims "[t]here are questions of fact as to whether the rulings by the District Court in the case of *Barona v. Duffy* collaterally estop the Tribe and the District Court from claiming or ruling that the 1983 contract is invalid." The doctrine of collateral estoppel is not applicable to this case.

In *Barona Group of Capitan Grande Band of Mission Indians v. Duffy (Duffy),* 694 F.2d 1185 (9th Cir.1982), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2091, 77 L.Ed.2d 301 (1983), the Band filed a declaratory relief action in district court against John Duffy, the Sheriff of San Diego County, California, requesting an injunction barring the enforcement of certain county and state laws pertaining to the operation of bingo games. In *Duffy,* the Band argued that the Sheriff was without authority to enforce the state and county bingo laws on the Barona reservation.

AMA argues that in his answer to the Band's complaint, Sheriff Duffy alleged that there was no case or controversy until the 1981 agreement was approved by the BIA as required by section 81. Additionally, in the Sheriff's opposition to the Band's motion for a preliminary injunction, the Sheriff claimed the case failed to meet the case or controversy requirement because the 1981 agreement was null and void without BIA approval. The district court denied the Band's motion for a preliminary injunction, but concluded that the case satisfied the case or controversy requirement of the Constitution. AMA claims that in determining justiciability the district court must have found that the 1981 agreement was valid and effective because BIA approval was not required. This argument is based on pure speculation. AMA has failed to demonstrate by citation to appropriate portions of the record that the district court made any factual finding or legal determination concerning the validity of the 1981 agreement.

5. AMA next asserts that "[t]here is a material issue of fact as to whether the conduct of the BIA, the rulings of the District Court in *Barona v. Duffy,* and the conduct of the Tribe and its attorney is sufficient to estop the Tribe and District Court from declaring the contract invalid under principles of equitable estoppel." AMA argues that it "began operating bingo games and constructed a bingo hall in express reliance upon the ruling of the BIA that written approval of the agreement was not required, the court's ruling in *Barona v. Duffy* which upheld the validity of the agreement, and the representations of the Tribe and its attorney." This claim is without merit.

■ AMA's actions in reliance on the BIA correspondence, and the district court's ruling in *Duffy,* involve the *1981* agreement. The question whether equitable estoppel would apply to the 1981 agreement is not before us in this proceed-

ing. AMA did not submit the 1983 agreement for approval.

6. AMA finally claims "[t]here are questions of fact as to whether the actions of the BIA in determining that the contract did not require approval, and the later ruling by the District Court in this case that the contract was invalid, constitute violations of AMA's Constitutional rights to due process, protection against taking of its property without just compensation, and equal protection." AMA fails to identify *any* triable issues of material fact which would preclude summary judgment as to these claims, and our review of the record has disclosed none. These issues involve questions of law which we address in sections VI, VII, and VIII of this opinion.

## IV. VALIDITY OF THE 1983 AGREEMENT UNDER 25 U.S.C. § 81

AMA contends that, based on the rationale of the decisions in *A.K. Management* and *Koberstein*, the 1983 agreement is not subject to 25 U.S.C. § 81 because it is not "relative to [Indian] lands." Neither case supports AMA's argument.

In *A.K. Management Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785 (9th Cir.1986), a bingo contractor entered into an agreement to construct a bingo facility and operate bingo games on the Indian's reservation. *Id.* at 786. The agreement was never signed or approved by the BIA. *Id.* Three days after the agreement was signed, the contractor was notified that the Band would not recognize the agreement. *Id.* The contractor filed a suit in district court seeking a declaration that the agreement was valid, binding, and enforceable. *Id.* The district court dismissed the contractor's complaint. *Id.* On appeal, the contractor contended that section 81 was not applicable because the bingo agreement did not concern payment to convey Indian land or involve tribal funds. *Id.* at 787. In rejecting the contractor's argument, we stated:

> AK's argument fails to recognize the specific language of section 81 which refers to "agreements ... *relative to* [Indian] lands." ... The broad language of section 81 expresses congressional intent

to cover almost all Indian land transactions....

> Because the Agreement gives the non-Indian contracting party, AK, the exclusive right to build and control the operation of the bingo facility located on tribal trust lands and prohibits the Band from encumbering the land, we hold that the instant agreement is "relative to [Indian] lands" under 25 U.S.C. § 81 (1982). *See Wisconsin Winnebago*, 762 F.2d at 621.

*Id.* (emphasis in original) (footnote omitted).

In *Wisconsin Winnebago Business Comm. v. Koberstein*, 762 F.2d 613 (7th Cir.1985), the Seventh Circuit was confronted with the identical issue, i.e., whether the bingo agreement between Indians and a contractor is an "agreement ... relative to [Indian] lands" under section 81. *Id.* at 619. The Seventh Circuit concluded:

> Because the Agreement gives [the contractor] the absolute right to control the operation of the bingo facility located on tribal trust lands and prohibits the exercise of the [Indian's] right to encumber tribal trust property, we hold that the Bingo Management Agreement is an "agreement ... relative to [Indian] land[s]," as the term is used in 25 U.S.C. § 81.

*Id.*

In the instant case, the 1983 agreement provides in pertinent part:

> ... Tribe is desirous of vesting in contractor the *exclusive right* and obligation *to finance, construct, improve, develop, manage, operate and maintain the property*.... (Emphasis added.)

> All business and affairs in connection with the financing, construction, improvement, development, operation, management and maintenance of the property subject to this Agreement shall be the responsibility of the contractor.... Contractor shall have the management and control of the operation of the Bingo games....

Additionally, the agreement prohibits the Band from operating any other bingo games on its property during the term of the agreement. Since the 1983 agreement

gives AMA the absolute right to build and control the bingo facility and operation, and limits the Band's ability to conduct other bingo games on its reservation, the first element of *A.K. Management* and *Koberstein* is satisfied.

■ AMA claims, however, the agreement between it and the Band is "substantially different" from the contracts in *A.K. Management* and *Koberstein* because the 1983 agreement gives the Band "substantial power and authority to review and oversee the management of bingo operations." AMA points to sections of the 1983 agreement which require it (1) to obey the Band's laws, ordinances, and regulations, (2) to obtain the Band's approval prior to substantially improving the bingo facility, and (3) to obtain the Band's approval of any encumbrance on the bingo facility. This argument lacks merit. Each of these restrictions was present in the bingo agreement in *A.K. Management*.[2] Nevertheless, we concluded that the management company retained absolute control of the bingo operation and facility.

AMA also argues that the agreement is not "relative to [Indian] lands" because the 1983 agreement does prohibit the Band from encumbering tribal trust land.

■ *A.K. Management* and *Koberstein* did not find (1) the management company's exclusive control of the bingo operation and facility and (2) the inability of the Indians to encumber their property were the *sine qua non* to finding that the bingo agreements were "relative to [Indian] lands" under section 81. "Until Congress repeals or amends the Indian ... statutes ... we must give them a 'sweep as broad as [their] language' and interpret them in light of the intent of the Congress that enacted them." *Central Mach. Co. v. Arizona State Tax Comm'n*, 448 U.S. 160,

166, 100 S.Ct. 2592, 2596, 65 L.Ed.2d 684 (1980) (citations omitted). Under the plain meaning of "[t]he broad language of section 81," *A.K. Management*, 789 F.2d at 787, the 1983 agreement between the Band and AMA can be termed "relative to [Indian] lands" even without a provision in the agreement prohibiting the Band from encumbering its property. The 1983 agreement states that AMA has "the exclusive right and obligation to finance, construct, improve, develop, manage, operate and maintain the property...." This is sufficient under the broad language of section 81 to find the 1983 agreement "relative to [Indian] lands" under section 81. Thus, since the 1983 agreement is "relative to [Indian] lands," and did not bear the indorsement or approval of the BIA or the Secretary, it is null and void under section 81.

## V. DISTRICT COURT'S FAILURE TO DEFER TO THE BIA'S INTERPRETATION OF SECTION 81

■ AMA contends the district court failed to follow the BIA's opinion expressed in its October 5, 1981 correspondence as to whether or not section 81 applies to the 1983 contract. The district court was not required to defer to the BIA's interpretation of section 81.

In September 1981, AMA submitted the 1981 agreement to the Southern California BIA office for approval. On October 5, 1981, the Acting Superintendent for the Southern California BIA office notified AMA that government approval of the 1981 agreement was not necessary:

Your enclosed agreement has been read carefully and we find, inasmuch as trust lands and funds are not involved, that the document does not require the approval or consent of the Bureau of Indi-

---

2. In the Band's memorandum in support of its motion for summary judgment, it included the January 7, 1984 tribal bingo management agreement between A.K. Management Co. and the San Manuel Band of Mission Indians which we considered in *A.K. Management*. The pertinent provisions of this agreement provided:

Manager and Manager's employees, including management personnel, shall at all times

abide by all ordinances, rules and regulations of the reservation not inconsistent with the terms hereof....

Upon completion of same, Manager shall submit the proposed plans, specifications and Budget (which shall include the pylon sign and parking lot) to the Tribe for approval....

[N]o third party loan shall be permitted without the approval of the Tribe....

an Affairs. We have conferred with the Field Solicitor's Office, Riverside and they concur with the above statement. . . .

This letter is limited only to the question of the need of Bureau approval of the Barona Group Bingo Agreement.

■ Generally, great deference is shown to an administrative agency's interpretation of the law which it is charged with administering. *The Steamboaters v. FERC*, 759 F.2d 1382, 1388 (9th Cir.1985). However, "the courts do not merely 'stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.'" *Baker v. United States*, 613 F.2d 224, 227 (9th Cir.), *cert. denied*, 449 U.S. 932, 101 S.Ct. 332, 66 L.Ed.2d 157 (1980) (quoting *NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965)). "Nor will the courts 'defer to an administrative construction where there are compelling indications that it is wrong.'" *Baker*, 613 F.2d at 227 (quoting *Marathon Oil Co. v. Kleppe*, 556 F.2d 982, 986 (10th Cir.1977)). Thus, the district court was "by no means bound by the agency's interpretation." *Dawson v. Myers*, 622 F.2d 1304, 1311 (9th Cir.1980), *vacated on other grounds sub nom., Beltran v. Myers*, 451 U.S. 625, 101 S.Ct. 1961, 68 L.Ed.2d 495 (1981).

In 1986, we held in *A.K. Management* that tribal bingo management agreements require the government's approval under 25 U.S.C. § 81. Our holding in *A.K. Management* is directly contrary to the interpretation of section 81 set forth in the October 5, 1981 letter to AMA.

The record shows that the BIA has changed its view concerning the applicability of section 81 to bingo agreements. The Assistant Secretary for Indian Affairs sent a letter on April 17, 1986 to all Area Directors which states: "[A]ll gambling management contracts of tribes or tribal enterprises should be presumed to fall within the scope of 25 U.S.C. § 81." The district court did not err in not deferring to

the October 5, 1981 BIA interpretation of section 81.

## VI. TAKING OF PROPERTY WITHOUT JUST COMPENSATION

AMA asserts that a determination that the 1983 bingo management agreement is void under section 81 will permit the Band to take the bingo hall without payment of just compensation to AMA in violation of the fifth and fourteenth amendments to the United States Constitution. We disagree.

■ "As separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56, 98 S.Ct. 1670, 1675, 56 L.Ed.2d 106 (1978). In *Talton v. Mayes*, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896), the Supreme Court held that the fifth amendment did not "operat[e] upon" "the powers of local self government enjoyed" by the tribes. *Id.* at 384, 16 S.Ct. at 989. After *Talton*, the federal courts have extended its holding to other provisions of the Bill of Rights, including the fourteenth amendment. *Martinez*, 436 U.S. at 56 & n. 7, 98 S.Ct. at 1676 & n. 7 (collecting cases). Thus, under *Talton* and its progeny, AMA's taking claim must fail.

## VII. DUE PROCESS

### A. *Procedural Due Process*

AMA contends it was denied procedural due process when (1) the BIA refused to approve the 1981 management agreement and (2) the district court denied its request for a continuance to conduct discovery. No due process violation occurred.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment[s]." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976).

■ This appeal concerns the 1983 agreement. Any procedural defect con-

cerning the BIA's conduct relative to the 1981 tribal bingo management agreement has no relevancy to the 1983 agreement. The 1983 agreement was not submitted to the BIA. Thus, no procedural error has been shown concerning the 1983 agreement. AMA's claim that it was denied due process because the district court denied its motion for a continuance is unpersuasive. AMA received adequate notice and an opportunity to be heard in opposition to the motion for a summary judgment. As discussed above, the court did not err in denying AMA's motion for a continuance. The district court did not abuse its discretion in denying AMA's request for a continuance to conduct further discovery.

### B. *Retroactive Application of 25 U.S.C. § 81*

 AMA claims the district court violated its right to due process under the fifth and fourteenth amendments "when it retroactively reversed the law created by the 1981 BIA ruling" and "retroactively declared the contract between AMA and the Tribe null and void." AMA relies on *Anderson, Clayton & Co. v. United States*, 562 F.2d 972 (5th Cir.1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978), for this novel proposition.

In *Anderson*, a taxpayer objected to the court giving retroactive effect to a Treasury Regulation it claimed was legislative in nature as opposed to merely interpretive. 562 F.2d at 984. The taxpayer argued the court should not accord retroactive effect to a rule legislative in nature when to do so would produce a harsh or unfair result. *Id.* In dictum, the Fifth Circuit explained:

> Strictly speaking, the question of retroactivity can arise only with respect to rules that are at least in part legislative in character. That is to say, to the extent a regulation merely interprets a statute, it in theory merely elucidates a meaning that has resided in the statute since its enactment. If an interpretive regulation merely clarifies what the lan-

guage of the statute was intended to convey, it is ultimately misleading to term it retroactive. "It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand."

*Id.* at 985 n. 30 (quoting *Manhattan Gen. Equip. Co. v. CIR*, 297 U.S. 129, 135, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936)).

The discussion concerning legislative and interpretive regulations in *Anderson* is not applicable to the matter before us. These facts do not involve a rule promulgated by an agency. Contrary to AMA's assertion, the BIA's correspondence was not a "ruling" which created an interest the district court was required to enforce. As discussed above, the district court was free to determine whether the contract was enforceable under section 81.

## VIII. EQUAL PROTECTION

· AMA contends 25 U.S.C. § 81 violates the equal protection clause of the fourteenth amendment to the United States Constitution because "[t]he preference it gives to the Tribe is neither reasonable nor rationally related to any need to protect the Indians." We disagree.

The equal protection clause of the fourteenth amendment is not applicable to the federal government. The Supreme Court has found an "equal protection component" applicable to the federal government in the fifth amendment's due process clause. *See Vance v. Bradley*, 440 U.S. 93, 94–95 & n. 1, 99 S.Ct. 939, 941 & n. 1 & n. 1, 59 L.Ed.2d 171 (1979) ("the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws").

It is well settled that "federal legislation with respect to Indian tribes, although relating to Indians as such, is not based upon impermissible racial classifications." *United States v. Antelope*, 430 U.S. 641, 645, 97 S.Ct. 1395, 1398, 51 L.Ed.2d 701 (1977); *Duro v. Reina*, 821 F.2d 1358, 1362–63 (9th Cir.1987). The Supreme Court has stated that legislation with respect to Indians

"has repeatedly been sustained by this Court against claims of unlawful racial discrimination." *Id.* The Court explained that "[t]he preference, as applied, is granted to Indians not as a discrete racial group, but, rather, as members of quasi-sovereign tribal entities...." *Morton v. Mancari,* 417 U.S. 535, 554, 94 S.Ct. 2474, 2484, 41 L.Ed.2d 290 (1974).

The Supreme Court has applied the lowest level of judicial scrutiny to an equal protection claim involving legislation pertaining to Indians. "As long as the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians, such legislative judgments will not be disturbed." *Id.* at 555, 94 S.Ct. 2485. Section 81 was enacted by Congress with the intent to protect the Indians from "improvident and unconscionable contracts." *In re Sanborn,* 148 U.S. 222, 227, 13 S.Ct. 577, 579, 37 L.Ed. 429 (1893); *A.K. Management,* 789 F.2d at 787. Section 81 does not deny equal protection to non-Indians.

## IX. LACHES

AMA contends the district court erred in granting the Band's motion for summary judgment because the record demonstrated that the Band was guilty of laches. AMA raised the laches defense in its memorandum in opposition to the motion for summary judgment.

▮ Laches is an equitable doctrine. "Its application depends upon the facts of the particular case." *Brown v. Continental Can Co.,* 765 F.2d 810, 814 (9th Cir. 1985). To establish the defense of laches, a party must show (1) there was inexcusable delay in the assertion of a known right and (2) the party asserting laches has been prejudiced. *Trustees for Alaska Laborers v. Ferrell,* 812 F.2d 512, 518 (9th Cir.1987).

▮ AMA has failed to demonstrate inexcusable delay or prejudice. The Band filed this action six days after our decision in *A.K. Management* established that tribal bingo management agreements are void

without BIA approval. Additionally, AMA was not prejudiced by the Band's "delay" in instituting this action. The parties executed the 1983 agreement after the bingo facility had been constructed pursuant to the 1981 agreement.

## X. OPPORTUNITY TO OBTAIN BIA APPROVAL

AMA contends the district court erred in granting the Band's motion for summary judgment without first giving AMA an opportunity to obtain BIA approval of the 1983 agreement. AMA relies on *Koberstein* as support for this contention.

In *Koberstein,* the governing body of the Wisconsin Winnebago Tribe (Tribe) entered into a tribal bingo management agreement with Ho-Chunk Management Corp. (contractor) to construct and manage a bingo facility on the Tribe's reservation. 762 F.2d at 614. The contractor submitted the agreement to the BIA for approval under 25 U.S.C. § 81. *Id.* at 615. The BIA determined BIA approval was not necessary because the funds the contractor was to receive were not trust funds or proceeds of trust property. *Id.* On the same day the bingo facility opened, the tribe voted to rescind the agreement with the contractor, but the contractor continued to operate the facility. *Id.* at 616. The tribe filed suit to enjoin the contractor from operating bingo games on its reservation, alleging the bingo agreement was void under 25 U.S.C. § 81. *Id.* The district court granted summary judgment in favor of the tribe, holding the agreement null and void since it had not been approved by the BIA. *Id.* Because the district court "believe[d] that equity demands that defendants be given a period of time to cure the defect which mandated summary judgment against them or to resolve its responsibilities in an orderly fashion," it gave the contractor three months before the agreement would become null and void to obtain BIA approval. *Id.* During this period, the contractor submitted the agreement to the BIA, which disapproved the agreement. *Id.* at 616 n.

4. The Seventh Circuit did not discuss the propriety of the district court's order staying the effective date of the judgment to permit the contractor to obtain BIA approval.

In AMA's opposition to the Band's motion for summary judgment, it requested the district court to "give AMA a reasonable period of time to cure the defect by submitting the agreement to the BIA and obtaining its approval." The district court implicitly rejected this request when it granted the Band's summary judgment motion without addressing this issue.

 The abuse of discretion standard of review is applicable to the district court's refusal to continue this matter so that AMA could attempt to obtain BIA approval. Under this standard, a reviewing court cannot reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir.1985). The appellate court cannot simply substitute its judgment for that of the lower court. *Chism v. National Heritage Life Ins. Co.*, 637 F.2d 1328, 1331 (9th Cir.1981).

 On April 7, 1986, the Assistant Secretary for Indian Affairs of the Department of the Interior sent a memorandum to all Area Directors establishing guidelines for approval of tribal bingo management agreements under section 81. The memorandum stated in pertinent part:

[A]ll gambling management contracts of tribes or tribal enterprises should be presumed to fall within the scope of 25 U.S.C. § 81....

The Secretary's policy statement recognizes ... the fact that ... federal courts are continuing to hold that 25 U.S.C. § 81 makes tribal bingo management contracts null and void unless they are approved.... I will be writing to the tribes to request that they submit their management contracts for review if they

have not yet done so. You should also encourage the tribes in your Area which have unapproved contracts to submit them for review. If feasible, you should offer to assist them in renegotiating the contracts to bring them into conformity with the guidelines.

The Assistant Secretary then listed 31 guidelines which should be considered when Area Directors review tribal bingo management contracts. Guideline number four provides:

The contract must have a fixed limited time to run, which must be distinctly stated. The contract term should not exceed five years unless there is provision for renegotiation of the management fee or other adjustment of the fee to accommodate changes in circumstances. For contracts of longer than five years duration, the opportunity for renegotiation or other provision for adjudgment should arise no later than five years after the contract is entered and thereafter at intervals of no longer than five years.

Section one of the 1983 agreement, provides for a term of 25 years. There is no provision for renegotiation or adjustment of the management fee. Thus, the 1983 agreement did not comply with the guidelines established by the Assistant Secretary of the Interior. The district court did not abuse its discretion in refusing to grant a continuance to permit AMA to attempt to obtain BIA approval. BIA approval would have been denied.

AFFIRMED.