42 F.3d 1399
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Leonard FRIEDMAN and Robert Friedman, Plaintiffs-Appellants,
v.
SALOMON BROTHERS, INC., a Delaware corporation; and DOES 1
through 10, inclusive, Defendants-Appellees.
 No. 93-55537.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1994.
Decided Dec. 7, 1994.
 
 Before: FEINBERG,* SCHROEDER and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 1. Plaintiffs Leonard and Robert Friedman appeal from a judgment of the district court granting defendant-appellee Salomon Brothers, Inc. (Salomon) summary judgment. The Friedmans charge that Salomon made oral misrepresentations in advising them to buy certain Revco junk securities in May and June of 1987, and that these misleading statements, along with material omissions, violated federal and state law.
 
 
 3
 2. As the district court found in its thorough opinion, Leonard Friedman (Leonard), at age 77, had "extensive experience in the securities and financial markets." He had accumulated a fortune of more than $100 million. Despite his wealth and personal involvement in several corporate mergers, Leonard maintains that he is too unsophisticated and inexperienced to make investment decisions on his own and that he has always bought and sold securities on the advice of his brokers.
 
 
 4
 3. Robert Friedman (Robert) is Leonard's son. He has worked for his father, managing real estate investments, since he left college in 1976 after two years of study. Robert also claims to base his investment decisions solely on the advice he receives from brokers. He speaks with his father at least once a week regarding their investments.
 
 
 5
 4. Salomon is an investment banking firm. Although most of its clients are institutional investors, the firm maintains a private investment department that deals with wealthy, sophisticated investors. Leonard and Robert were clients of Salomon's private investment department, in which they maintained non-discretionary accounts. In the course of their relationship with Salomon, and before the transactions at issue in this case, the Friedmans received written advice from Salomon that they, not Salomon, were responsible for deciding whether to adopt any strategy or to engage in any transaction. They understood that Salomon did not serve as their money manager.
 
 
 6
 5. Although the Friedmans lost money on transactions involving Revco securities purchased in May and June of 1987, they enjoyed multimillion dollar profits on junk securities purchased through Salomon, including significant profits on Revco high-risk securities purchased in 1986 and sold soon thereafter. They continued to speculate in high-risk Revco securities, through Salomon and other brokers, after they concluded that Salomon defrauded them with respect to the mid-1987 transactions.
 
 
 7
 6. Between May 29, 1987 and June 25, 1987, Leonard and Robert purchased more than $3.5 million of Revco junk securities. As the district court expressed it, Leonard made his purchases after a conversation he "thinks" he had with Teri Ludwick, a high yield specialist employed by Salomon, in which she recommended the securities as a "good thing to buy" and a "good deal." Robert did not recall having a conversation with Ludwick concerning his June 1987 purchases of Revco, but inferred that such a conversation took place because it was his practice to purchase Revco junk securities only after talking to her. Before making these purchases, the Friedmans received from Salomon, but did not read, a prospectus describing the significant risks of investing in these Revco securities. The prospectus also stated that Salomon underwrote the securities and held nearly a 10 percent equity stake in Revco, which entitled Salomon to place a director on Revco's board.
 
 
 8
 7. After a price drop of approximately 20% between July 1, 1987 and October 15, 1987, Leonard believed "that something might be wrong that he didn't know about yet." He also knew in late September or early October that Revco's "earnings weren't so good," and these weak earnings were a "source of concern" to him. He therefore decided to "cut his losses" and sold approximately half of his Revco Preferred bonds on October 15, 1987. He claimed that he would not have sold these securities except on the advice of his broker but admitted that no one at Salomon told him not to sell his entire Revco holdings.
 
 
 9
 8. Robert did not sell any of his Revco securities in October 1987. He maintains that despite his weekly investment conversations with his father, he had no notice of his father's anxiety concerning, or sale of, Revco securities. Leonard and Robert claim that they did not conclude that Revco had defrauded them until January 1988, when prices on Revco securities dropped even further. The Friedmans opted out of a class action suit brought against Salomon (the ARSAM action) 14 months later, which alleged that Salomon's prospectus regarding Revco securities contained materially misleading statements. The class action ultimately was settled.
 
 
 10
 9. In response to Salomon's motion for summary judgment, the Friedmans sought additional discovery under Fed.R.Civ.P. Rule 56(f). They sought to depose, among others, Warren Foss, head of Salomon's High Yield Division and Salomon's representative on Revco's board of directors between April 1987 and February 1988. The district court granted summary judgment against appellants without explicitly addressing the Rule 56(f) request.
 
 
 11
 10. Appellants claim that under Sec. 10(b) of the Securities Act of 1934, as amended, 15 U.S.C. Sec. 78j(b), and rule 10b-5, 17 C.F.R. Sec. 240.10b-510(b), Ludwick's statement to them was actionable as a material misstatement of fact, or that it was actionable because factual omissions rendered her statement materially misleading. The Friedmans can establish that Ludwick's general recommendation is actionable as a material misrepresentation only if they can prove the falsity of one of three implied factual assertions: "(1) that the statement is genuinely believed, (2) that there is a reasonable basis for that belief, and (3) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement." In re Apple Computer Sec. Litigation, 886 F.2d 1109, 1113 (9th Cir.1989). Appellants point to no evidence in the voluminous record before us on appeal sufficient to have raised a genuine issue of fact for the district court as to whether Ludwick (or those whose knowledge could be attributed to her) genuinely believed that Revco was a good deal, whether that belief was reasonable, or whether anyone in Salomon's High Yield Division was aware of any undisclosed facts about Revco that undermined the accuracy of Ludwick's recommendation. We therefore agree with the district court that on the record before it summary judgment was appropriate on the Friedmans' misrepresentation claim.
 
 
 12
 Summary judgment was also appropriate on the Friedmans' omission claim, because even if the Friedmans could establish that Ludwick possessed and failed to disclose material information concerning Revco's dire financial condition, they could not establish that her failure to disclose that information caused their harm. We have previously held that the presumption of reliance ordinarily afforded in omissions cases is rebuttable. See Keirnan v. Homeland, Inc., 611 F.2d 785, 789 (9th Cir.1980). Here, Salomon Bros. produced compelling unrebutted evidence that the Friedmans did not read any of the prospectuses or other materials Salomon Bros. sent them, and by their own admission the Friedmans relied exclusively on Ludwick's recommendation in deciding to buy Revco securities. The Friedmans have failed to present any proof that they would have attached significance to the allegedly omitted facts. Thus, summary judgment was appropriate because the Friedmans have failed to raise a genuine issue of fact as to reliance, which is an essential element of their omissions claim.
 
 
 13
 11. Appellants argue that even if the record was insufficient, the district court erred in granting summary judgment because it failed to grant--or even consider--their Rule 56(f) request. Additional discovery, they contend, would have revealed that Salomon employees, including Foss, knew that Revco was in dire financial condition in May and June of 1987. In general, we review a district court's rulings on discovery issues for abuse of discretion. Stitt v. Williams, 919 F.2d 516, 526 (9th Cir.1990). Appellants argue that the general rule does not apply here because the district court did not address their 56(f) request, revealing that it failed to exercise discretion. Under these circumstances, they assert, a de novo standard of review applies. Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518-19 & n. 3 (9th Cir.1987). The abuse of discretion standard continues to govern, however if the court implicitly exercised discretion to deny the 56(f) motion by its grant of summary judgment. Barona Group of the Capitan Grande Band of Mission Indians v. American Management & Amusement, Inc., 840 F.2d 1394, 1400 (9th Cir.), cert. denied, 487 U.S. 1247 (1988); Stitt, 919 F.2d at 525-26 & n. 15.
 
 
 14
 12. We cannot say that the district court failed to exercise its discretion. The opinion granting Salomon's motion for summary judgment mentioned the information that appellants sought, and characterized the existence of such information as speculative. This reference implies that the district court considered the 56(f) request, found that appellants had failed to do more than speculate as to the existence of the information they sought and exercised its discretion to deny the request. The fact that no motion to compel was pending before the court supports our conclusion that the lack of an explicit ruling on the 56(f) request did not amount to a failure to exercise discretion. Mission Indians, 840 F.2d at 1400 n. 1.
 
 
 15
 13. Thus, the abuse of discretion standard applies, and we cannot say that the court abused its discretion in granting summary judgment without allowing additional discovery. First, as the court noted, the existence of the information was merely speculative. See, e.g., Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416-17 (9th Cir.1987). In addition, appellants had access to two depositions of Foss taken in the ARSAM class action and in another related case. Appellants did not make clear why a third deposition would reveal what the prior depositions did not. This case was originally started in December 1989. Appellants offer no persuasive explanation as to why, in a case pending that long, they failed to take Foss' deposition earlier even though they did in fact depose other Salomon employees, including Ludwick.
 
 
 16
 14. Appellants insist that the district court's refusal to allow additional discovery should be reversed because it was based on an erroneous belief that a "Chinese Wall" defense would prevent imputation of Foss' knowledge to Ludwick. We need not resolve that issue, however, because, as noted above, the district court had adequate independent reason for denying the discovery request.
 
 
 17
 15. Turning to appellants' state law claims, they argue that the district court erred in dismissing their action for breach of fiduciary duty. However, we agree with the district court that Ludwick's general recommendations were no more actionable under state than under federal law. McGonigle v. Combs, 968 F.2d 810, 817 (9th Cir.), cert. dismissed sub nom. Casares v. Spendthrift Farm, Inc., 113 S.Ct. 399 (1992). Also, appellants argue that if Foss was negligent under state law in fulfilling his duties as a Revco director, such negligence gives rise to a cause of action against Salomon. However, appellants cite no authority and we have found none in support of that claim. Appellants also argue that the district judge incorrectly thought that he could disregard a decision by an intermediate appellate state court, Duffy v. Cavalier, 215 Cal.App.3d 1517 (1st Dist.1989), rev. denied, Feb. 15, 1990, upon which appellants relied to show that they are entitled to recover under state law. Community Nat'l Bank v. Fidelity & Deposit Co., 563 F.2d 1319, 1321 & n. 1 (9th Cir.1977). While the court did indicate that Ninth Circuit law rather than Duffy was controlling, we find no reversible error. First, Duffy itself recognizes that a broker's fiduciary duty is limited if, as here, the agency is narrow. Duffy, 215 Cal.App. at 1534-36. In addition, this aspect of the district court's holding was only an alternative ground, the primary ground being the nonactionability of Ludwick's statements. Thus, Duffy does not require reversal.
 
 
 18
 16. Appellants also press a state law claim for professional malpractice. Salomon argues that because appellants did not adequately raise this claim in the district court, it is barred on appeal. We believe that this contention is correct. In any event, appellants have cited no authority holding a broker liable on such a theory where the account was nondiscretionary and the type of investment was generally suitable to the client's goals. Therefore, the district court did not err in dismissing this state law claim.
 
 
 19
 17. Finally, Robert argues that the district court erred in holding that his claims under California Corporate Securities Law and Sec. 11 of the Securities Act of 1933 were barred by the one-year limitation period. Because we agree with the district court that by October 15, 1987, Robert was on "inquiry notice" of possible misrepresentations, we conclude that these claims are time-barred.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The Honorable Wilfred Feinberg, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3