113 F.3d 1241
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gary V. JERNIGAN, Plaintiff-Appellant
v.
Robert BORG; J. Valencia; D.J. Evans; E. Lewis; R.
Harikian; R. Brown; J. Franz; G.W. Shepherd,
Defendants-Appellees.
 No. 95-16999.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 13, 1997.*
Decided April 29, 1997.
 
 Before: HUG, Chief Judge; THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Gary V. Jernigan is an inmate at Folsom Prison. In 1990 and 1991, prison officials[1] required Jernigan to perform landscaping tasks near a prison warehouse. Jernigan discovered the soil in the area outside of the warehouse was contaminated with lead and arsenic. Jernigan filed a civil rights complaint against the officials under 42 U.S.C. § 1983,[2] alleging the officials violated his Eighth Amendment rights by: (1) requiring him to work in the toxic warehouse area, and (2) failing to provide medical care for injuries resulting from his exposure to lead and arsenic. The district court granted the prison officials' motion for summary judgment. Jernigan appeals.[3]
 
 
 3
 We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 A. Section 1983 Claims
 
 4
 "Section 1983 imposes two essential proof elements upon a claimant" like Jernigan: "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir.1988). Here, the prison officials were acting under color of state law, so the case turns on the second inquiry: "whether the prison officials' conduct deprived [Jernigan] of [his] rights under the eighth amendment." Id. at 633.
 
 1. Exposure to Toxins
 
 5
 To prove an Eighth Amendment claim for exposure to toxins, Jernigan was required to demonstrate: (a) "that the deprivation [he] suffered was 'objectively, sufficiently serious' "; and (b) that prison officials were deliberately indifferent to his health or safety in allowing the deprivation to take place. Wallis v. Baldwin, F.3d 1074, 1076 (1995). In Farmer v. Brennan, 114 S.Ct. 1970 (1994), the Supreme Court held that, to act with deliberate indifference, a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[4] Id. at 1979.
 
 
 6
 We need not consider whether the deprivation Jernigan suffered was "sufficiently serious" because Jernigan did not offer proof that any prison official acted with deliberate indifference.
 
 
 7
 Correctional Officers Valencia, Evans, and Lewis directly supervised Jernigan and other inmates in their landscaping activities. To demonstrate deliberate indifference, Jernigan was required to show that these three correctional officers knew that the PIA warehouse area was potentially toxic. Jernigan attempted to do so by stating that, while landscaping, he informed the officers of the foul odor and hissing sound coming from the drums stored near the PIA warehouse. Jernigan did not explain, however, why Valencia, Evans, and Lewis should have inferred from the fact the drums were emitting a smell and sound that the drums contained toxic waste. Cf. Wallis, 70 F.3d at 1077 (reversing grant of summary judgment in prison's favor partially because prison official testified that he had been forewarned of asbestos in the work area, and that he was personally aware of the asbestos in the work area). Without this proof, Jernigan cannot survive summary judgment against Valencia, Evans, and Lewis on the critical issue of deliberate indifference.
 
 
 8
 Borg, Franz, and Shepherd were supervisory officials at the prison. Jernigan presented no evidence showing that any of these three officials knew that the soil around the PIA warehouse area was toxic in 1990 and 1991, when Jernigan was instructed to work in that area. Therefore, Borg, Franz, and Shepherd were entitled to summary judgment on the issue of deliberate indifference. See Farmer, 114 S.Ct. at 1979.
 
 
 9
 Harikian and Brown were also supervisory officials at the prison. Jernigan did produce some evidence that Brown and Harikian subjectively knew of the dangerous condition of the PIA warehouse area: he introduced a copy of a letter drafted on October 10, 1989 from Brown to Harikian which stated that the area "[b]ehind warehouse is a disaster."
 
 
 10
 As supervisory officials, Harikian and Brown may be liable under section 1983 if Jernigan proved "a sufficient causal connection between [their] wrongful conduct and the constitutional violation."[5] Mackinney v. Nielsen, 69 F.3d 1002, 1008 (9th Cir.1995) (internal quotations and citations omitted); see also Thompkins v. Belt, 828 F.2d 298, 305 (5th Cir.1987) (holding, where inmate "adduced no evidence whatever" that jail had a systematic policy that resulted in unconstitutional violation, that supervisory officer cannot be held liable "on the theory that he implemented an unconstitutional policy"). Our review of the record reflects that Jernigan offered no evidence of supervisory liability.
 
 
 11
 We affirm the district court's grant of summary judgment against Jernigan on his Eighth Amendment claim for exposure to toxins.
 
 2. Failure to Provide Medical Care
 
 12
 Jernigan also argues the prison officials violated the Eighth Amendment by failing to provide him with adequate medical care for injuries resulting from his exposure to toxins.
 
 
 13
 Deliberate indifference to the serious medical needs of a prisoner violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To demonstrate that prison officials acted with deliberate indifference, Jernigan must show that they denied him access to medical care "in conscious disregard of an excessive risk to [his] health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.), cert. denied, 117 S.Ct. 584 (1996).
 
 
 14
 "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds, WMX Technologies v. Miller, 1997 WL 1218 (9th Cir. Jan. 2, 1997) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976). Examples of serious medical needs include: "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059-60.
 
 
 15
 The only evidence Jernigan presented showing he manifested a need for medical care consisted of copies of doctors' notes of his visits to the prison infirmary. These notes state only that Jernigan suffered from headaches, dizziness, and nausea a few times in the Spring of 1992, but do not otherwise indicate that Jernigan was suffering from exposure to lead, arsenic or any other toxin.
 
 
 16
 Even if Jernigan had a serious need for medical care, he did not communicate that need to any prison official. We therefore conclude that the officials' failure to act to ensure Jernigan received medical care was not deliberate indifference. See Anthony v. Dowdle, 853 F.2d 741, 743 (9th Cir.1988) (affirming grant of summary judgment for prison officials where prisoner's injuries "were neither obvious to the [officials] nor were any outward manifestations of the seriousness of his internal injuries noticed by the [officials].").
 
 
 17
 We affirm the district court's grant of summary judgment against Jernigan on his Eighth Amendment claim for deliberate indifference to his serious medical needs.
 
 B. Request to Reopen Discovery
 
 18
 A party seeking additional discovery is required to present an affidavit setting forth the particular facts expected from additional discovery. Barona Group of Capitan Grande Band of Mission Indians v. American Management & Amusement, Inc., 840 F.2d 1394, 1400 (9th Cir.), cert. dismissed, 487 U.S. 1247 (1988) (citing Brae Transp. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir.1986)); see also Fed.R.Civ.P. 56(f). "Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment." Barona Group, 840 F.2d at 1400 (citing Brae Transp. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir.1986).
 
 
 19
 Jernigan did not state, in support of his motion requesting additional discovery, the particular facts he expected discovery would yield. We therefore conclude the district court properly denied Jernigan's request to reopen discovery.
 
 C. Appointment of Expert Witnesses
 
 20
 Jernigan contends the trial court abused its discretion when it denied his request to appoint an expert witness. We disagree. Expert scientific testimony would only have helped Jernigan demonstrate that he was, in fact, exposed to toxins. Such scientific testimony would not have enabled Jernigan to survive summary judgment on the issue of deliberate indifference. We therefore conclude the district court did not abuse its discretion in refusing Jernigan's request for an expert.
 
 D. Appointment of Counsel
 
 21
 Under 28 U.S.C. § 1915, a district court may "request an attorney to represent" a civil litigant proceeding in forma pauperis. 28 U.S.C. § 1915(d) (1979). A district court may only designate counsel pursuant to section 1915(d) in exceptional circumstances. Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir.1986) (internal quotations and citations omitted). A finding of exceptional circumstances requires an evaluation of: (1) "the likelihood of success on the merits;" and (2) "the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." Id. (internal quotations and citations omitted).
 
 
 22
 The district court did not abuse its discretion in denying Jernigan's request for appointment of counsel. Neither of Jernigan's Eighth Amendment claims had a likelihood of success because Jernigan did not offer proof that any official acted with deliberate indifference in either exposing him to toxins or denying him medical care. Further, our reading of the record indicates that Jernigan was able to represent himself pro se. Jernigan wrote reasonably well, and demonstrated a grasp of the legal issues involved in his case.
 
 E. Request to Strike Hearsay
 
 23
 Finally, Jernigan argues the district court erred in not striking the testimony of Franz and Dr. Shedler, the prison officials' experts. He contends their testimony was inadmissible hearsay, not based on personal knowledge, speculative, and prejudicial. We disagree.
 
 
 24
 We review for abuse of discretion the trial court's decision on the exclusion of evidence in the context of summary judgment. Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 886 (9th Cir.1996). Only admissible evidence may be considered by the district court in granting summary judgment. Fed.R.Civ.P. 56(e); Beyene v. Coleman Security Svcs., Inc., 854 F.2d 1179, 1181 (9th Cir.1988). "[I]nadimissible hearsay evidence may not be considered on a motion for summary judgment." Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 345 n. 4 (9th Cir.1995). "[M]ere ... speculation [does] not create a factual dispute for purposes of summary judgment." Nelson v. Pima Community College, 83 F.3d 1075, 1081-82 (9th Cir.1996). Affidavits supporting and against summary judgment must be based on personal knowledge. Fed.R.Civ.P. 56(e); see also Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir.1996).
 
 
 25
 Dr. Shedler, the Acting Chief Medical Officer at California State Prison, Sacramento, an expert witness, testified that, based on his review of Jernigan's medical record, it was his opinion that Jernigan was not seen "for anything related to toxic chemical exposure." Shedler's statement was not hearsay: he was not attesting to the truth of the records he read, but rather, interpreting them. His opinion was based on the record he reviewed and was not speculative.
 
 
 26
 Franz, the Associate Hazardous Materials Specialist at Folsom Prison, testified that, based on his review of the facts, "it is unlikely that [the prisoners] were exposed to any health endangering levels of lead." Franz based his testimony on a report prepared by Woodward-Clyde Associates for the prison in 1995 about the possible toxicity of the area near the PIA warehouse.
 
 
 27
 Franz, a toxicologist, qualifies as an expert under Rule 702 of the Federal Rules of Evidence. See Fed.R.Evid. 702. Under Rule 703, the Woodward-Clyde report was the type of evidence which could be "reasonably relied upon by experts" in toxicology. Franz properly relied on that report in forming his expert opinion. His testimony was admissible.
 
 
 28
 We conclude the district court did not abuse its discretion in considering the declarations of Franz and Dr. Shedler.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Jernigan's original complaint named the following defendants: the California Department of Corrections, James Rowland, R.G. Borg, J. Valencia, D.J. Evans, E. Lewis, R. Harikian, R. Brown, J. Franz, G.W. Shepherd, and Does 1-20. The district court subsequently dismissed Jernigan's claims against the Department of Corrections and Rowland
 
 
 [2]
 Jernigan filed the complaint with three other plaintiffs, all of whom were inmates alleging exposure to toxins from working near the warehouse. Only Jernigan appealed the district court's grant of summary judgment
 
 
 [3]
 Jernigan's appeal is pro se and in forma pauperis
 
 
 [4]
 In his complaint, Jernigan named Does 1-20 as defendants. However, because Jernigan must demonstrate the subjective prong of the deliberate indifference standard from Farmer with respect to each defendant to survive summary judgment, the district court's grant of summary judgment with regards Does 1-20 was proper
 
 
 [5]
 Prison supervisors are not vicariously responsible for the § 1983 violations of their subordinates. Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir.1989)