[No. F008822. Fifth Dist. June 30, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JOEL PATRICK WILLIAMS, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

John Francis Bowman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and W. Scott Thorpe, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

MARTIN, Acting P. J.—In August 1986, defendant was charged with murder (Pen. Code, § 187)[1] with personal use of a firearm (§ 12022.5).

While represented by the Kern County Public Defender's Office, he pleaded not guilty and denied the firearm allegation.

Thereafter, defendant informed the court he was "half Indian" and requested a lawyer affiliated with the Bureau of Indian Affairs (BIA). The court provided defendant with the name of the director of the Indian Tribal Council in Bakersfield and the deputy public defender said he would contact a friend who was the director of Indian Legal Services in Coeur

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

d'Alene, Idaho. The court continued the matter to resolve the appointment of defense counsel. Defendant said he was an "enrolled" Indian from the Duck Valley Shoshone Tribe in Owyhee, near Winnemucca, Nevada.

On December 24, 1986, the court conducted an in camera hearing with the defendant and deputy public defender present. Defendant sought to represent himself with the public defender as associate or advisory counsel. The deputy public defender informed the court his office had a policy against such appointments. The trial court discussed with defendant the appointment of an Indian attorney, including the method of compensation. Nothing was resolved at this hearing.

On January 14, 1987, the deputy public defender informed the court retired California Judge Fred Gabourie, Sr., of "American Indian background," had agreed to accept the appointment to represent defendant. Defendant agreed to the appointment and the trial court appointed Gabourie to represent defendant subject to his, Gabourie's, acceptance of the appointment.

On January 21, 1987, the court formally denied defendant's motion to represent himself and defendant again expressed his willingness to have Attorney Gabourie as his counsel. The court further noted Attorney Gabourie had agreed to accept appointment as defendant's attorney.

On January 23, 1987, the court relieved the public defender as counsel and defendant personally consented to being represented by Attorney Gabourie.

On April 17, 1987, the district attorney filed an amended information which added the allegation defendant had been previously convicted of a serious felony (§ 667). On the same date, defendant entered a change of plea. He pleaded guilty to murder and admitted the firearm use allegation in exchange for dismissal of the prior serious felony allegation. The maximum term to be imposed was 27 years to life.

On May 29, 1987, defendant and a deputy public defender, on behalf of Attorney Gabourie, appeared at the sentencing hearing. Defendant requested the trial court consider the results of a polygraph examination in support of a motion to strike the firearm use enhancement. The court ruled the polygraph evidence could not be considered but did listen to defendant's testimony as to the circumstances of the offense. The court sentenced defendant to state prison for 25 years to life for the murder conviction and a consecutive 2-year term for the firearm use enhancement.

Defendant filed a timely notice of appeal.

On January 12, 1988, the superior court filed a certificate of probable cause nunc pro tunc July 30, 1987. (§ 1237.5.)

## FACTS

Defendant's father was murdered on May 7, 1986. He was shot nine times. On April 17, 1987, defendant pleaded guilty to the murder (§ 187) with personal use of a firearm (§ 12022.5). The court sentenced defendant to state prison for 27 years to life.

### Defense

At the sentencing hearing, the court summarized defendant's version of the offense: "It is Mr. Williams's position today that he did not do the actual shooting, that he and a friend were at the house, and they were in the process of stealing some things from the defendant's father, I believe they were tools . . . . [T]he father, who worked down in Los Angeles County, down in Carson, I believe, came home early, he came up on his motorcycle, he surprised Mr. Williams and a friend of his in the act of stealing those tools, that the father got off the motorcycle, charged at the defendant and his friend and the friend pulled out the gun and did the shooting." Defendant testified in detail at the sentencing hearing. He admitted the shooting, admitted he and his friend went to his father's home to steal, stated his friend Robert Negy was the actual shooter, and acknowledged he helped Negy bury the victim.

## DISCUSSION

I. ■ *Did the Appointment of an Idaho Tribal Prosecutor as Defense Counsel Violate the Rule of People v. Rhodes?*[2]

Prior to December 16, 1986, defendant was represented by the Kern County Public Defender. On that date, defendant informed the superior court he wanted the appointment of an American Indian as new counsel. The court was unaware of any Indian lawyers in the area but allowed defendant to call Jim Felis of the Indian Tribal Council in Bakersfield. The deputy public defender representing defendant informed the court he knew the director of Indian Legal Services in Coeur d'Alene, Idaho, and said he would attempt to contact the director on defendant's behalf. On December 19, 1986, the deputy public defender informed the court he had contacted

---

[2] *People* v. *Rhodes* (1974) 12 Cal.3d 180 [115 Cal.Rptr. 235, 524 P.2d 363].

the Indian Legal Aid Foundation in Coeur d'Alene, Idaho. He said the foundation was administered by former California Judge Fred W. Gabourie, Sr., an American Indian.

On December 24, 1986, defendant sought to remove the public defender's office as appointed counsel and to substitute himself in propria persona. However, defendant also indicated he wished to have a representative of the public defender's office or an American Indian attorney serve as associate or advisory counsel. On January 14, 1987, the court appointed Attorney Gabourie as defense counsel subject to his formal acceptance of the appointment. Upon Gabourie's acceptance of that appointment, the court agreed to relieve the public defender's office as attorney of record for the defendant.

The following exchange occurred at the January 14, 1987, proceeding: "MISS CORBIN [deputy public defender]: Your Honor, for the record, I would like to state, Mr. Bryan informed me that Judge Gabourie is now tribal prosecutor Plummer, Idaho, just so you have an idea where he is. I don't know how long a duration that is.

"THE COURT: We will contact Judge Gabourie. As far as relieving the public defenders office, we will do so only after Judge Gabourie formally accepts the appointment.

"MISS CORBIN: I wondered about that, okay.

"THE COURT: That would be the situation there. Mr. Williams, is that agreeable with you, sir?

"THE DEFENDANT: Yes."

On January 22, 1987, Attorney Gabourie filed a written notice of appearance, entry of plea and demand for jury trial. On January 23, 1987, the court conducted a hearing on a defense motion for discovery. The following exchange occurred: "MR. BRYAN [deputy public defender appearing for Attorney Gabourie]: Your Honor, there is one stipulation I'd like to get on the record for the defendant, just one very brief one, your Honor. When I originally contacted Judge—former Judge Gabourie at Mr. Williams' request I did not know that he was a prosecutor in the state of Idaho and I have informed the defendant that Judge Gabourie was a prosecutor, Indian prosecutor, for a large Indian area in Idaho and he has consented to defend the defendant in this case and I think the defendant should be apprised of the fact Judge Gabourie is a prosecutor. Is it okay if he represents you in this case?

"THE DEFENDANT: Sure.

"THE COURT: Very well."

On July 21, 1987, Attorney Gabourie executed a declaration which stated in relevant part: "1. That I *am not* the tribal prosecutor for my tribe and therefore have no status nor duties thereto, however, I *am* the Tribal prosecutor for the Coeur d'Alene Tribe of Indians of the State of Idaho and my duties are as follows: prosecute (misdemeanor) criminal actions arising within the exterior boundaries of the Coeur d'Alene Indian Reservation . . . . Further, I act as an advisor to the Tribal Court judges concerning civil litigation in the tribal court and also advise the tribal law and order committee.

"2. My ethnic status is Seneca nation (Iroquois) as is the language group.

"3. That I am informed and based on that information believe that Joel Patrick Williams is a member of the Owahye [*sic*] Tribe, Duck Valley, Nevada.

"4. I am not exactly certain if and when I disclosed my status to the court, on the record, however I did disclose my status informally to one of the Judges, the public defender's office, the private investigator, the prosecutor (D.D.A.) and I advised Joel Patrick Williams on several occasions, however, not on the record.

"5. That other than my duties as a tribal prosecutor for the Coeur d'Alene Tribe, I have no legal status as a Tribal representative . . ., however, on occasion, I may be asked to attend seminars or other meetings to discus [*sic*] generally, advances in Indian law throughout the United States, Canada and sometimes Mexico, and only a small portion of which concerns criminal law."

On August 4, 1987, defendant executed a declaration in support of ex parte motion for certificate of probable cause, stating: "I was never told by my court-appointed counsel Fred W. Gabourie, Sr., that he was a prosecutor of any type or kind. [¶] I knew only that appointed trial counsel was an American Indian, and a lawyer. I am an American Indian, and my reservation connection is in Owyhee, Nevada, Duck Valley Reservation."

Defendant's declaration, of course, misstates or distorts the facts as evidenced by the record in the instant case.

In *People* v. *Rhodes, supra,* 12 Cal.3d 180, the indigent defendant was convicted of forgery after a jury trial (§ 470). Defendant was represented by the City Attorney of Hanford under appointment by the trial court. Hanford is the county seat of Kings County where the trial was conducted. The responsibilities of a city attorney included, among other things, the prosecution of people accused of violating city ordinances. Defendant contended on appeal he was denied his constitutional right to effective assistance of counsel because the prosecutorial responsibilities of a city attorney constituted a conflict of interest precluding effective representation of criminal defendants. The California Supreme Court did not determine whether the appointment of a city attorney to represent indigent criminal defendants is constitutionally impermissible. However, the court concluded it was contrary to public policy to appoint the city attorney to represent defendant and the conviction must be reversed.

The Supreme Court held the nature and duties of a public prosecutor are inherently incompatible with the obligations of a criminal defense counsel. When a city attorney represents criminal defendants there arises the possibility either the defendant's interest in a vigorous and determined advocacy or the public's interest in the smooth functioning of the criminal justice system will suffer. In addition, public confidence in the integrity of the criminal justice system could be adversely affected by the appearance of impropriety incident to a public prosecutor's private representation of a criminal defendant. The interests of both criminal defendants and the judicial system require city attorneys who have prosecutorial responsibilities not represent criminal defendants. The Supreme Court concluded: ". . . as a judicially declared rule of criminal procedure . . . a city attorney with prosecutorial responsibilities may not defend or assist in the defense of persons accused of crime. Since it was improper to appoint Hanford's City Attorney to represent defendant, the judgment of conviction must be reversed." (12 Cal.3d at pp. 186-187, fns. omitted.)

In *Montgomery* v. *Superior Court* (1975) 46 Cal.App.3d 657 [121 Cal.Rptr. 44], the First District Court of Appeal applied the *Rhodes* guidelines where (1) the criminal defense counsel involved was the law partner of a city attorney; (2) the city which employed the partner took legislative action purporting to divest the city attorney of prosecutorial responsibilities; (3) the criminal defendant involved, acting with full knowledge of the *Rhodes* decision, waived any effect as to him; and (4) the criminal defendant affirmatively requested the trial court to permit defense counsel to represent him in his pending prosecution. The court held the city attorney of a city which has validly divested him of prosecutorial responsibilities or his professional associates in the practice of law may defend or assist in the defense of any criminal action in which personnel of the employing city are not

involved in any significant respect. The defendant must have knowingly and intelligently waived any irregularity which might be perceived by reason of the *Rhodes* proscription, subject to appropriate exercise of the trial court's discretion in a particular case. Since an accused may waive his right to counsel altogether if he "knowingly and intelligently" elects to do so, it follows he may competently waive any irregularities suggested by the *Rhodes* proscription with respect to his defense counsel, if he acts with the same knowledge and intelligence. Whether the waiver meets such requisites is not established by defendant's execution of a pro forma writing which states them. Rather, it is to be determined to the satisfaction of the trial court.[3]

Subsequent to the foregoing cases, the Legislature enacted Government Code section 41805 (Stats. 1975, ch. 556, § 1, p. 1132) which states in relevant part: "(a) No city attorney who does not, in fact, exercise prosecutorial responsibilities on behalf of the city or cities by which he is employed shall be precluded from defending or assisting in the defense of, or acting as counsel for, any person accused of any crime except for violation of any ordinance of the city or cities by which he is employed, provided that: [¶] (1) The city or cities by which he is employed expressly relieve him of any and all prosecutorial responsibilities on its or their behalf; and [¶] (2) The accused has been informed of and expressly waives any rights created as a result of any potential conflict created by his attorney's position as a city attorney."

Defendant contends in the instant case:

"1. *People* v. *Rhodes* bars all active prosecutors from being appointed to represent indigent criminal defendants. [¶] 2. The lower court appointed an active prosecutor of an American Indian tribe to represent this indigent criminal defendant who is also an American Indian. [¶] 3. The recent case of *Duro* v. *Reina* [(9th Cir. 1987) 821 F.2d 1358] gave wide jurisdiction to tribal Indian courts over non-member Indians in criminal cases, 'because (defendant) is an Indian.' [¶] 4. Defendant was denied due process as that process has become established in this State by *Rhodes* and its judicially declared rule of criminal procedure, when it appointed an active prosecutor to represent him in this serious felony case. [¶] 5. No notice or inquiry was made by the appointing lower court, even though *Rhodes* is a blanket proscription and waiver would be ineffective in any event. [¶] 6. *Rhodes*

---

[3] See also *Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333] (when the possibility of significant conflict has been brought to the court's attention and the danger of proceeding with chosen counsel has been disclosed generally to defendant, he may insist on retaining his attorneys if he waives the conflict knowingly and intelligently for purposes of the criminal trial).

requires no showing of prejudice for its rule to apply. [¶] 7. *Rhodes* is not a new or novel case, and its message is not now in doubt. Equal protection requires application here. [¶] 8. *Rhodes* is not limited to California prosecutors. [¶] 9. This is not a challenge to the integrity, ability or competency of appointed counsel, but he was simply not available at several important hearings, and had a substitute appear for him, including sentencing where vital motions were presented without the necessary support available, thus giving the appearance of less than a vigorous defense by counsel."

The People submit the public policy concerns expressed in *Rhodes* are inapplicable to a California case involving a defense attorney who is also an Indian tribal prosecutor in Idaho: ". . . In California local prosecutors, rather than tribal prosecutors, have jurisdiction 'over offenses committed by or against Indians' in 'all Indian country within the state.' (18 U.S.C. § 1162) Thus, a 'tribal prosecutor,' in contrast to a local city attorney, would never prosecute any crime in California and would never relate to law enforcement or the public in a prosecutorial capacity. In the case at bar, Mr. Gabourie, who was a tribal prosecutor in Idaho, clearly would never be involved with California law enforcement officers as a prosecutor because he lacked jurisdiction territorially and substantively. Mr. Gabourie could have challenged the constitutionality or applicability of any California statute or practice without having the problem presented in *Rhodes* where the city attorney might be called upon to defend that statute or practice the next day. Likewise, Mr. Gabourie would not have had any problem in vigorously cross examining law enforcement officers because, as a tribal prosecutor in Idaho, he had no official relationship with local police as did the city attorney in *Rhodes*. [¶] . . . [T]he public's perception of a person being defended by a local city attorney who prosecutes cases is *not* comparable to the public's perception of a person being defended by an Indian tribal prosecutor from another state. This difference in perception is greater where the defendant had demanded representation by someone of his own ethnic background . . . [I]n the case at bar the record implies that Mr. Gabourie was the only Indian attorney available, and appellant insisted on an Indian attorney."

Apparently, there are three recognized types of Indian tribal courts: (1) Courts of Indian Offenses, organized under the BIA model code; (2) tribal courts, found in tribes who have developed their own code pursuant to the Indian Reorganization Act of 1934 (25 U.S.C. § 461 et seq.); and (3) traditional courts, found in tribes that have not developed their own code under the Indian Reorganization Act. (Note, *The Indian: The Forgotten American* (1968) 81 Harv.L.Rev. 1818, 1832.)

Tribes may establish tribal courts as an exercise of their inherent sovereign powers, whether or not the tribal constitution allows for the creation of

a tribal court. The United States allows each sovereign within its jurisdiction to adjudicate the needs and conflicts of that sovereign's populace. The United States Supreme Court has recognized tribal courts are the "appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians." (*Santa Clara Pueblo* v. *Martinez* (1978) 436 U.S. 49, 65 [56 L.Ed.2d 106, 120, 98 S.Ct. 1670].) Although there is apparently no act of Congress providing for the establishment of tribal courts, the legislative and executive branches have assumed considerable responsibility for these courts. (Note, *Recognition of Tribal Decisions in State Courts* (1985) 37 Stan.L.Rev. 1397, 1400-1404.)

In 1978, the United States Supreme Court noted 127 courts operating on Indian reservations. These included 71 tribal courts, established and functioning pursuant to tribal legislative powers; 30 Courts of Indian Offenses operating under the Code of Federal Regulations, and 16 traditional courts. (*Oliphant* v. *Suquamish Indian Tribe* (1978) 435 U.S. 191, 196, fn. 7 [55 L.Ed.2d 209, 214, 98 S.Ct. 1011].)

In the instant case, the parties have not cited and we have not found any statutory or case authority specifying the nature and duties of a tribal prosecutor. Defendant argues: "[a]ppointed defense counsel identified himself as *the* prosecutor for the tribe, which is the status of a district attorney for a tribe. District attorneys may not defend persons accused of crimes in this State ([Gov.] Code, § 26540). As in *Rhodes,* our defense counsel prosecuted misdemeanors." Defendant's argument involves much surmise and conjecture, and finds little support in the record. More importantly, the instant case is clearly distinguishable from *Rhodes.* In *Rhodes,* the Supreme Court was concerned with the public's perception of a criminal justice system which would permit local prosecutors to act as defense counsel in the same county. Such a perception is not comparable to the public's perception of a person being defended in a California court by a part-time Indian tribal prosecutor for another or different Indian tribe from another state. Moreover, this difference in perception is even greater where, as here, the defendant demanded representation by someone of his own ethnic background, and consented on the record to the appointment with knowledge that Gabourie was an "Indian prosecutor" in the State of Idaho.

The *Rhodes* court pointed out the city attorney acting as defense counsel will inevitably struggle between "counsel's obligation to represent his client to the best of his ability and, on the other hand, a public prosecutor's natural inclination not to anger the very individuals whose assistance he relies upon in carrying out his prosecutorial responsibilites." (*People* v. *Rhodes, supra,* 12 Cal.3d 180, 184.) In the instant case, Attorney Gabourie

would never rely upon Kern County law enforcement officers in carrying out his prosecutorial responsibilities in Idaho. The *Rhodes* court noted the same potentially debilitating conflict is operative when the only police officers called as witnesses are members of neighboring law enforcement agencies. Again, Attorney Gabourie served as a prosecutor of misdemeanors in the tribal court at the Coeur d'Alene reservation in Plummer, Idaho. The Kern County Sheriff's Department is, of course, not a "neighboring law enforcement agency" with respect to the Coeur d'Alene Indian reservation. Nothing in the record shows the Kern County law enforcement agency granted Attorney Gabourie courtesies and assistance in his role as tribal prosecutor. Therefore, there is no basis to conclude Gabourie would be tempted to temper his advocacy in Kern County, California, to preserve the cooperation of law enforcement in his function as tribal prosecutor in the State of Idaho.

The American Bar Association has noted: "A number of courts have imposed professional discipline upon a lawyer who appeared on both sides of the same case, either first as prosecutor and later as defense counsel or first as defense counsel and later as prosecutor. But where the circumstances have shown no division of loyalties, courts have recognized that it is permissible for one who holds prosecutorial office to act as defense counsel in another jurisdiction.

"In all of these situations the controlling consideration is the avoidance of any possibility of division or dilution of loyalties. Relationships between lawyers who are associated in practice are so close and the potential for conflict is so great, given the lack of any strong reason for permitting such representation, that a flat prohibition is warranted against lawyers from the same firm or office appearing as prosecutor and defense counsel. Similarly, it would not be sound to permit one who regularly serves as a prosecutor to appear as defense counsel opposing one who ordinarily is his or her associate in the prosecution office." (1 ABA Standards for Criminal Justice, std. 4-3.5 (2d ed. 1980) pp. 4.44-4.45, citing *People* ex rel. *Colorado Bar Assn.* v. *Johnson* (1907) 40 Colo. 460 [90 P. 1038]; *Yancey* v. *State* (1928) 41 Okla.Crim. 197 [271 P. 170], fns. omitted.)

As we have shown, in the instant situation there is no such possibility of any division or dilution of loyalties by reason of Attorney Gabourie acting on behalf of defendant in this case.

Defendant contends *Duro* v. *Reina, supra,* 821 F.2d 1358 compels a different result. In *Duro,* the petitioner, an enrolled member of the Torrez-Martinez band of Mission Indians, murdered an enrolled member of the Gila River Indian tribe. The crime occurred on the Salt River Indian

Reservation where defendant resided with his girlfriend. Criminal complaints were filed in the tribal court (the Salt River Pima-Maricopa Indian Community Court) and in the United States District Court for the District of Arizona. A grand jury indicted petitioner and the district court dismissed the indictment without prejudice on motion of the United States. The tribal court denied petitioner's motion to dismiss for lack of criminal jurisdiction. The district court issued a writ of habeas corpus upon defendant's petition and the tribal authorities appealed. The Ninth Circuit Court of Appeals concluded the tribal court had jurisdiction over Duro and the district court erroneously granted the writ. Duro was enrolled in a recognized tribe, although not in the Salt River community. He was closely associated with the community through his girlfriend, a community member, his residence with her family on the reservation, and his employment with the Salt River Community Construction Company. These contacts justified the tribal court's conclusion that Duro was an Indian subject to its criminal jurisdiction. Extending tribal court criminal jurisdiction to nonmember Indians who have significant contacts with a reservation does not amount to a racial classification. This policy is reasonably related to the legitimate goal of improving law enforcement on reservations.

In the instant case, defendant contends ". . . the status of being a prosecutor for a tribe makes that official have a potential conflict with any Indian of whatever other tribe, because that prosecutor could prosecute any other Indian . . . ." Defendant's contention must be rejected. In *Duro,* the court held the criminal jurisdiction of a tribal court extends to an Indian who is not a member of the tribe, if he is accused of committing an offense against another nonmember Indian on the tribe's reservation. In the instant case, defendant had no significant contacts with either the Coeur d'Alene tribe, which employed Attorney Gabourie, or the Seneca Nation, to which Attorney Gabourie belonged. Defendant committed no crime within the jurisdiction of the tribal court of the Coeur d'Alene Indians and therefore there was no potential conflict with respect to Attorney Gabourie.

In view of the foregoing facts and circumstances, including defendant's express waiver of any conflict, and the absence of any dilution of Gabourie's loyalties as a defense advocate, defendant's argument must be rejected. The trial court was not precluded from appointing Attorney Gabourie as defendant's counsel.

II.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

*See footnote *ante,* page 835.

The judgment is affirmed.

Ballantyne, J., and Pettitt, J.,* concurred.

A petition for a rehearing was denied July 26, 1988, and appellant's petition for review by the Supreme Court was denied September 21, 1988.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.