[No. F014737. Fifth Dist. Nov. 1, 1990.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
MELVIN JANS, Real Party in Interest.

COUNSEL

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, W. Scott Thorpe and Clayton S. Tanaka, Deputy Attorneys General, for Petitioner.

No Appearance for Respondent.

David B. Stanton for Real Party in Interest.

## OPINION

**THE COURT.**\*—California adopted the "Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Proceedings" (Uniform Act) in 1937. The Navajo Nation adopted the Uniform Act in 1989. The Uniform Act provides for the issuance of a subpoena by a California court for the attendance of a witness in an out-of-state criminal proceeding when "a judge of a court of record in any state, which by its laws provides for commanding persons within that state to attend and testify in this state, . . ." certifies such witness is necessary and material. The California court must then hold a hearing and make specific findings prior to issuance of the subpoena. (Pen. Code, § 1334.2.)[1] "State" is defined in Penal Code section 1334.1 as "any State or Territory of the United States and the District of Columbia."

The Window Rock District Court for the Navajo Nation certified that Melvin Jans, vice-president at Tenneco West, Inc., residing in Bakersfield,

---

\* Before Best, P. J., Baxter, J., and Thaxter, J.

[1] Penal Code section 1334.2 provides in relevant part:

"If a judge of a court of record in any state, which by its laws provides for commanding persons within that state to attend and testify in this state, issues a certificate under the seal of the court that there is a criminal prosecution pending in the court, or that there is a grand jury investigation, that a person within this state is a material witness in that prosecution or grand jury investigation, and that his or her presence will be required for a specified number of days, then, upon presentation of the certificate to a judge of a court of record in the county in which the person is, a time and place for a hearing shall be fixed by the judge and he or she shall make an order directing the witness to appear at the hearing.

"If, at the hearing, the judge determines that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution or grand jury investigation in the other state, and that the laws of the state in which the prosecution is pending or in which there is a grand jury investigation will give to the witness protection from arrest and service of civil and criminal process and will furnish in advance to the witness the sum of ten cents ($0.10) for each mile necessarily traveled if the witness elects surface travel or the minimum round trip scheduled airline fare plus twenty cents ($0.20) a mile for necessary surface travel at either end of the flight if the witness elects air travel, and, except as provided in subdivision (b) of Section 1334.3, a per diem of twenty dollars ($20) for each day that he or she is required to travel and attend as a witness and that the judge of the court in which the witness is ordered to appear will order the payment of witness fees authorized by law for each day the witness is required to attend the court plus reimbursement for any additional expenses of the witness which the judge of the court in which the witness is ordered to appear shall find reasonable and necessary, he or she shall issue a subpoena, with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending, or where the grand jury investigation is, at a time and place specified in the subpoena. In any of these hearings the certificate shall be prima facie evidence of all the facts stated therein.

". . . . . . . . . . . . . . .

"If the witness, who is subpoenaed as provided in this section, after being paid or tendered by some properly authorized person the sum or fare, and per diem set forth in this section, fails without good cause to attend and testify as directed in the subpoena, he or she shall be punished in the manner provided for the punishment of any witness who disobeys a subpoena issued from a court of record in this state."

California was a necessary witness in a criminal matter to be tried by the district court. The Kern County Superior Court held a hearing pursuant to Penal Code section 1334.2. At the end of the hearing the court concluded that the California statute did not encompass the witness request from the Navajo Nation, such request not emanating from a "State or Territory of the United States" as required by the statute. ■■■ The issue before us is whether the Legislature, in using the word "State," intended to include certified orders of the court of the Navajo Nation.

We conclude that the proper resolution of the issue is to read "State" in the statute as including the Navajo Nation.

■ As with any issue of statutory interpretation the guiding star is the intent or purpose of the Legislature. (*People* v. *McCaskey* (1985) 170 Cal.App.3d 411, 415 [216 Cal.Rptr. 54].) We look first to the language of the statute; where the language clearly and unambiguously expresses the intent of the Legislature we need go no further. (*Ibid*.) "If the court determines the statute is ambiguous, other rules of statutory construction must be used to interpret the legislative intent." (*Ibid*.)

■ In resolving the issue here then the first question is whether the statute is ambiguous. While the definition of "State" as including "any State . . . of the United States" clearly and unambiguously refers only to other territorial states admitted to the Union, the alternative definition of "State" by use of the term "Territory of the United States" is not unambiguous.

The relationship of numerous quasi-sovereign political entities to the United States (Guam, Puerto Rico, Marianas, Virgin Islands, Canal Zone, American Samoa), and their respective degree of self-determination, varies widely. Statutory law and case law do not create a single unified meaning of "Territory," "territory" or "territories" in all situations. Guam was found not to be a territory within the meaning of an Internal Revenue Service statute. (*Sayre & Company* v. *Riddell* (9th Cir. 1968) 395 F.2d 407, 409.) In another case the newly formed Commonwealth of Puerto Rico, with a high degree of self-determination, continued to be a territory for purpose of statutory construction of a federal statute. (*Americana of Puerto Rico, Inc.* v. *Kaplus* (3d Cir. 1966) 368 F.2d 431, 434.) We do not find any cohesive, clear definition of what is or is not a "Territory of the United States" either within or without California law. (See *In re Terui* (1921) 187 Cal. 20, 27 [200 P. 954, 17 A.L.R. 630].)

Having found the term "Territory of the United States" ambiguous, the next step is to determine whether the Legislature intended to include within the reach of this term such diverse entities as the Navajo Nation. No

published case has addressed the question of whether the term "Territory of the United States" can include a Native American or Indian nation in the context of the Uniform Act under discussion here.

However, several courts have addressed the question of whether "Territory . . . of the United States" as used in 28 United States Code section 1738, the codification of the full faith and credit clause of the United States Constitution, includes Native American nations or political entities. A majority has concluded that such nations are encompassed within the meaning of territory. (See *Jim* v. *CIT Financial Services Corporation* (1975) 87 N.M. 362 [533 P.2d 751, 752]; see also *Sheppard* v. *Sheppard* (1982) 104 Idaho 1 [655 P.2d 895, 901-902]; *Matter of Adoption of Buehl* (1976) 87 Wn.2d 649 [555 P.2d 1334, 1342]; *In re Larch* (4th Cir. 1989) 872 F.2d 66, 68; *United States ex rel. Mackey* v. *Coxe* (1856) 59 U.S. 100, 103 [15 L.Ed. 299, 301] ["the Cherokee territory . . . is not a foreign, but a *domestic territory*, a territory which originated under our constitution and laws." (italics added.)]; see generally Note, Recognition of Tribal Decisions in State Courts (1985) 37 Stan.L.Rev. 1397; and compare with *Brown* v. *Babbitt Ford, Inc.* (1977) 117 Ariz. 192 [571 P.2d 689].)

Real party asserts that the use by the California Legislature of a capital "T," rather than a small "t," to begin the word "territory" differentiates our statute from the full faith and credit cases as well as the statutes of other jurisdictions which have ordered witnesses to appear in the criminal proceedings now pending in the Navajo District Court. Real party fails, however, to cite any rule of grammar or statutory construction which supports his assertion that the capitalization of the letter "T" in "Territory" limits the meaning of that term. When the statute was adopted in 1937 there was a more plentiful use of capital letters on words which in modern usage would not be capitalized. We ascribe no special meaning to the Legislature's use of a capital letter.

The question then is whether the California Legislature intended to encompass such domestic courts and jurisdictions as represented here by the Navajo Nation in defining "State" to include any "Territory of the United States." At the time California adopted the Uniform Act there is no indication that any Native American nation had yet adopted the act, and therefore we might rightfully conclude that the Legislature did not specifically contemplate whether such entities would be included in its definition of "State." The failure of the Legislature to exactly contemplate the issue before us however does not disable us from finding that the Legislature intended for such entitles to be included within the reach of the statute. (*Eastern Air Lines, Inc.* v. *C. A. B.* (1965) 122 App.D.C. 375 [354 F.2d 507, 510-511].) We look to the purpose of the statute.

The statute here requires reciprocal cooperation for the enforcement of witness attendance orders. The essence of the Uniform Act is to create a community of jurisdictions which will honor the request of fellow members for the appearance of witnesses at criminal proceedings under the conditions specified in the act. (*Vannier* v. *Superior Court* (1982) 32 Cal.3d 163, 172 [185 Cal.Rptr. 427, 650 P.2d 302].) A restrictive interpretation of the definition of that community necessarily restricts the reach of the enacting jurisdiction to ensure that all who are deemed necessary and material witnesses will be forced to appear in its own criminal cases. The act gives only insofar as it takes.

It appears to promote best the purpose of the act to conclude that in defining "State" as including any "Territory of the United States" the Legislature meant to encompass all domestic jurisdictions which otherwise could satisfy the requirements of the statute. If the statute is not so interpreted, arguably segments of the population could become immune to the reach of the California courts in their criminal proceedings.

Case law establishes that Native Americans residing on reservations enjoy protection from compulsion of the state courts in a variety of matters such as extradition, garnishment, service of process and fresh pursuit. (*State of Arizona ex rel. Merrill* v. *Turtle* (9th Cir. 1969) 413 F.2d 683; *Joe* v. *Marcum* (10th Cir. 1980) 621 F.2d 358; *Francisco* v. *State* (1976) 113 Ariz. 427 [556 P.2d 1]; *Benally* v. *Marcum* (1976) 89 N.M. 463 [553 P.2d 1270].) Thus, Native Americans residing on reservations, we presume without deciding, would be similarly immune from compulsion by the court of the state wherein the reservation is located to appear as a witness in a criminal matter off the reservation. In order to insure such persons could be compelled to attend in another state, that state would have to recognize reciprocally the tribal court's power to similarly compel attendance. Thus, the mutually beneficial nature of the Uniform Act is furthered by including Native American nations in the definition of "State."

Moreover, each jurisdiction is encouraged to interpret matters which concern tribal governance in a manner which fosters self-determination. (See Note, Recognition of Tribal Decisions in State Courts, *supra*, 37 Stan.L.Rev. at pp. 1398-1400.) In recognizing the right of the tribal courts to request the attendance of witnesses, we recognize their right to conduct such criminal proceedings. To deny them the power to compel witnesses we risk reducing their criminal proceedings to a farce or sham. If they cannot force necessary and material witnesses to appear they must either proceed in the face of inadequate evidence or be deprived of the ability to prosecute certain criminals. While federal legislation provides for the federal prosecution of certain specified, serious felonies occurring on a reservation (18 U.S.C. § 1153), other crimes cannot be punished if the tribal courts cannot

effectively prosecute them. If we barred Native American Nations from the community of jurisdictions which reciprocally recognize one another, we would undermine their self-determination.

Real party raises the specter of chaos were we to recognize the Navajo Nation's right to compel attendance, noting that hundreds of Native American tribes exist. The existence of numerous Native American tribes does not compromise the correctness of recognizing the Navajo's right to compel witnesses. A large number of the tribes do have tribal courts (see *People* v. *Williams* (1988) 202 Cal.App.3d 835, 844 [248 Cal.Rptr. 793]); it is in this state's interest that these separate jurisdictions join the community of states reciprocally compelling attendance. It must be remembered that in order to be a part of the community a legislative body must adopt the statute and a judge of the court system must certify the order. Where these tribal institutions exist, a state need not worry about the welfare of its citizens; the act itself has built-in protections for such witnesses. Recognition of the Navajo's order here does not imply approval of the tribal organization, merely recognition of their jurisdiction.

We conclude the word "State" in Penal Code section 1334.2 includes the Navajo Nation.

This court emphasizes that this opinion addresses only the trial court's finding that the Navajo Nation was not a state within the meaning of the Uniform Act as adopted by California. The trial court's refusal to issue a subpoena based upon such determination was in error. Upon remand the trial court should immediately reopen the hearing pursuant to Penal Code section 1334.2 if it deems further hearing necessary and, thereafter, enter an order either granting or denying the issuance of a subpoena pursuant to Penal Code section 1334.2.

Petitioner is entitled to appropriate relief. After due notice contained in petitioner's "Petition for Writ of Mandamus" (see Code Civ. Proc., § 1088) and in order to prevent frustration of the relief granted, this court concludes that a peremptory writ should issue and that it shall become final on the date this opinion is filed. (Cal. Rules of Court, rule 24(d).)

Let a peremptory writ of mandate issue forthwith directing respondent court to vacate its order of October 3, 1990, denying the motion to compel

appearance of a witness in Kern County Superior Court action No. 5.5-2321, to reconsider said motion in light of the views expressed in this opinion and thereafter make an order either granting or denying said motion.

Insofar as petitioner requests relief in addition to that granted above, the petition is denied.

The petition of real party in interest for review by the Supreme Court was denied November 28, 1990. Mosk, J., was of the opinion that the petition should be granted.